UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Mary Oliver Benoit,<br>    *Plaintiff,*<br><br>    *v.*<br><br>State of Connecticut Department of Motor Vehicles,<br>    *Defendant.* | Civil No. 3:10cv1007 (JBA)<br><br><br><br>January 6, 2012 |

RULING ON MOTION TO DISMISS

On February 11, 2011, Plaintiff Mary Oliver Benoit filed a Corrected Second Amended Complaint [Doc. # 39] against Defendant, the State of Connecticut Department of Motor Vehicles ("DMV"), alleging that the DMV violated Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 ("Title VII"), 42 U.S.C.A. § 2000e; 42 U.S.C. § 1981; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12111 et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 et seq. ("Section 504"); the Connecticut Fair Employment Practices Act ("CFEPA"), C.G.S.A. §§46a-58 et seq.; and Section 301 of the Labor Management Relations Act, 1947 ("LMRA"), 29 U.S.C. § 185. Defendant moves [Doc. # 42] to dismiss Plaintiff's claims under 42 U.S.C. § 1981 and the LMRA for lack of subject–matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), on the ground of sovereign immunity. For the reasons stated below, Defendants' motion to dismiss will be granted. The Court will also dismiss Plaintiff's ADA and CFEPA claims.

I.    Factual Allegations

Plaintiff alleges that Defendant has continuously "discriminated against, harassed, retaliated against and failed to reasonably accommodate the plaintiff, an African–American

female with a disability," on the basis of race, disability, and in retaliation for filing a complaint against her supervisors with the Connecticut Commission on Human Rights and Opportunities. (*See* Corrected 2d Am. Compl. [Doc. # 39] ¶¶ 2, 29–32.) Plaintiff alleges that during the fall of 2008, she informed Defendant that she was suffering from migraines that impaired her vision, and provided medical documentation of her disability. (*Id.* ¶ 19). Plaintiff requested reasonable accommodation from the defendant for her disability, specifically that she be transferred from a "hostile and discriminatory environment." (*Id.* ¶¶ 21, 23.) Plaintiff alleges that Defendant denied this request, did not claim that the requested accommodation was unreasonable and did not propose any alternative accommodation. (*See id.* ¶ 23.) Plaintiff also alleges that Defendant accommodated other non–disabled employees. (*See id.* ¶ 24.) At all times, Plaintiff alleges that she "was able to perform the essential functions of her job with or without reasonable accommodation." (*Id.* ¶ 18.)

In addition to refusing to grant her request for a transfer out of the hostile work environment, Plaintiff alleges that Defendant has prevented her from taking a promotional examination by refusing to provide her with a required letter. (*Id.* ¶ 25.) She asserts that a less–qualified employee, who is of a different "race, color and/or ethnicity," and who has not complained about the conduct of Defendant, was provided with such a letter, and thus granted access to the exam. (*Id.* ¶¶ 26, 27.) Plaintiff also alleges that she was denied training by Defendant in March 2009, while other similarly situated employees not of Plaintiff's "race, color and/or ethnicity" as well as employees who have not complained about Defendant's conduct were given access to training. (*Id.* ¶ 28.)

In response to this conduct, Plaintiff filed "at least eight" Affidavits of Illegal Discriminatory Practice with the Connecticut Commission of Human Rights and

2

Opportunities (CHRO), "numerous" complaints with the Department of Administrative Services of Connecticut (DAS), and "several" complaints with the Equal Employment Opportunities Commission as well as "numerous" internal complaints. (*Id.* ¶ 16.) In particular, on March 10, 2009, Plaintiff filed a "CHRO complaint" regarding Defendant's decision to deny her training which named two of her supervisors, and alleging that they had discriminated against Plaintiff based on either her race or disability. (*Id.* ¶ 30.) On April 9, 2009 and May 15, 2009, the two supervisors named in the March 10 CHRO complaint issued disciplinary counseling memoranda to Plaintiff and subjected her to counseling sessions. (*Id.* ¶¶ 31, 32.) Plaintiff alleges that other similarly–situated employees who are not of her race and are not disabled and who perform their jobs "less well" have not been subjected to disciplinary counseling. (*Id.* ¶¶ 33, 34.) She also alleges that the DAS investigated Defendant's decision to require Plaintiff to undergo disciplinary counseling, and found that Defendant had not required any other DMV employee to undergo counseling. (*Id.* ¶ 35.) The DAS found that Defendant ordered Plaintiff to undergo disciplinary counseling in retaliation for filing a CHRO complaint against her supervisors. (*Id.* ¶ 36.)

Plaintiff also alleges that on September 30, 2009, the two named supervisors issued a falsely negative performance review of the plaintiff which has adversely impacted her salary, employment opportunities, and her opportunity for advancement at the DMV. (*Id.* ¶ 38.)

Based on these allegations, and without differentiating which allegations give rise to each cause of action, Plaintiff claims that Defendant has violated Title VII, 42 U.S.C. § 1981, Title I of the ADA, section 504 of the Rehabilitation Act, and CFEPA. (*See id.* ¶¶ 42–46, count one.)

In the second count, Plaintiff alleges that during the period of time over which these events took place, Plaintiff was a member of a union, AFSCME, which had a collective bargaining agreement with Defendant. (*Id.* ¶ 41.) Plaintiff claims that Defendant breached its contractual obligation under this agreement because it refused to settle a grievance filed by her union regarding Defendant's actions, and that AFSCME breached its duty of fair representation in "redressing plaintiff's grievance against the defendant." (*See id.* ¶¶ 42, 43.) Plaintiff claims that these allegations give rise to a claim under Section 301 of the LMRA, 29 U.S.C. § 185.

## II. Legal Standard[1]

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002) (internal quotation marks and citations omitted). "In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* at 497 (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d. Cir 1996). "When considering a motion to dismiss for lack

---

[1] Plaintiff frames Defendant's motion to dismiss as a motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Pl.'s Opp'n. [Doc. # 45] at 2.) The sovereign immunity granted to a state by the Eleventh Amendment has been defined by the Supreme Court as "a constitutional limitation on the federal judicial power established by in Article III." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). This constitutional limitation "deprives federal courts of any jurisdiction to entertain such claims, and thus may be raised at any point in a proceeding." *Id.* at 99, n.8. Given such a construction of the limiting power of the Eleventh Amendment, Defendant's motion to dismiss is properly viewed as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

of subject matter jurisdiction . . . a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Services Corp. v. Drakos*, 140 F.3d 129, 131 (1998) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Normally, "when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* (citing *Norton v. Larney*, 266 U.S. 511, 515 (1925)). However, when the defense of sovereign immunity is raised, "the governmental entity invoking the Eleventh Amendment bears the burden of demonstrating that it qualifies as an arm of the state entitled to share in its immunity." *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 237 (2d Cir. 2006).

Although Defendant has moved to dismiss only Plaintiff's claims under 42 U.S.C. § 1981 and Section 301 of the LMRA, "'[i]t is a fundamental precept that federal courts are courts of limited jurisdiction' and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C., v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (quoting *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978)). Usually, "[when] subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action *sua sponte*. *Id.* (citing *Louisville & Nashville R. R. v. Mottley*, 211 U.S. 149, 152 (1908)). When a governmental entity has failed to raise the Eleventh Amendment as a defense to a claim that may be barred from being brought in federal court, "lower courts may raise the issue of Eleventh Amendment immunity *sua sponte*, [but] they are not required to do so." *Woods*, 466 F.3d at 238 (citing *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 389

(1998)). The Court will accordingly examine all of Plaintiff's claims to determine whether it is appropriate to raise the issue of sovereign immunity sua sponte.

III.    Discussion

    A.    The Eleventh Amendment

The Eleventh Amendment states that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects any Foreign State." U.S.. Const. Amend. XI. The limitations imposed by the Amendment also serve to bar lawsuits against a state by its own citizens. *See Hans v. La.*, 134 U.S., 1, 18–19 (1890). Unless a state waives its sovereign immunity or Congress abrogates it through legislative action, the Eleventh Amendment bars plaintiffs from suing a state in federal court, regardless of the type of relief sought. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–101 (1984) (internal citations omitted). The Eleventh Amendment's grant of sovereign immunity also extends to entities considered to be "arm[s] of the State," *see Mt. Healthy City Sch. Bd. of Educ. v. Boyle*, 429 U.S. 274, 280 (1977), but not to individual, named state officials when they are sued in their official capacity by parties who only prospective injunctive relief. *See Va. Office for Prot. and Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) (citing *Ex Parte Young*, 209 U.S. 123 (1908)).

The *Ex Parte Young* doctrine permits plaintiffs to seek prospective injunctive relief against individual, named state officials sued in their official capacity who would otherwise be entitled to sovereign immunity. *See id.* This doctrine "rests on the premise . . . that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign–immunity purposes. The doctrine is limited to

that precise situation, and does not apply "when 'the state is the real, substantial party in interest.'" *Id.* (quoting *Pennhurst*, 465 U.S. at 101 (quoting *Ford Motor Co. v. Dep't of Treas. of Ind.*, 323 U.S 459, 464 (1945))).

Ms. Oliver Benoit has brought this action against only the DMV, and not against any individual state officials. Her counsel conceded at oral argument that for the purposes of the Eleventh Amendment, the DMV is "an arm of the state."

B.      Section 1981

Section 1981 provides in relevant part that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981. Pursuant to § 1981, Plaintiff seeks "prospective injunctive relief," which she defines as:

> A. A temporary and permanent injunction requiring the defendant immediately to provide and restore lost back pay, benefits, seniority, vacation days, sick days and other benefits to the plaintiff;[2]
> B. A temporary and permanent injunction requiring the defendant immediately to cease and desist any and all harassment, retaliation against and disparate treatment of the plaintiff so that she may carry out her employment duties; and
> C. a temporary and permanent injunction requiring the defendant immediately to provide reasonable accommodation to the plaintiff so that she may carry out her employment duties.

---

[2] The injunction sought by Plaintiff that would require Defendant to provide and restore lost back pay and benefits is more appropriately termed retroactive relief. *See Quern v. Jordan*, 440 U.S. 332, 337 (1979) (defining "retroactive relief" as that which "requires payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal–question determination, but as a form of compensation"). However, this distinction between retroactive relief and prospective relief is relevant only when an individual state official is sued in his or her official capacity. When the state or one of its "arms" is the defendant, sovereign immunity bars federal courts from entertaining lawsuits against them "regardless of the nature of the relief sought." *Pennhurst*, 465 U.S. at 100.

(Corrected 2d Am. Compl. ¶¶ A, B, C.) The Second Circuit has held that "'the express cause of action for damages created by § 1983 constitutes the *exclusive* federal remedy for violation of the rights guaranteed in § 1981 by state governmental units,'" *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 703 (1989)), and Plaintiff's counsel stated at oral argument that her Section 1981 claim is brought through the mechanism of Section 1983. However, lawsuits that seek injunctive relief against a state department pursuant to Section 1983 are barred by the Eleventh Amendment. *See Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) (injunctive relief sought against DMV pursuant to § 1983 barred by Eleventh Amendment).

Plaintiff argues that *Wagner v. Connecticut Department of Correction*, 599 F. Supp. 2d 229 (D. Conn. 2009), supports her argument that she can seek prospective injunctive relief against a state department rather than an individual state officer in his or her official capacity. The relevant portion of *Wagner* upon which Plaintiff relies, reads: "As a cause of action pursuant to 42 U.S.C. § 1983, Wagner's claims against the DOC and the individual defendants in their official capacity, except to the extent they seek prospective injunctive relief, are barred by the doctrine of sovereign immunity." *Id.* at 237–38 (citing *Quern*, 440 U.S. 332; *Pennhurst*, 465 U.S. at 100). At oral argument, Plaintiff's counsel conceded that *Wagner* is the only case to which he could direct the Court that supported this position and that "*Wagner* now may not be 100 percent correct."

The Court reads *Wagner* differently than Plaintiff does. *Wagner* does not state, as Plaintiff argues, that a Section 1983 claim against a state agency or against an individual defendant is barred unless it seeks prospective injunctive relief, but rather that a Section 1983 claim against a state agency, regardless of the relief sought, is always barred by the

doctrine of sovereign immunity and that a Section 1983 claim against an official–capacity individual defendant is barred unless the plaintiff seeks prospective injunctive relief. Judge Droney relies on the Supreme Court's decisions in *Pennhurst*, without limiting or distinguishing, which states clearly that "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment," although a plaintiff may sue an individual state officer for prospective injunctive relief. 465 U.S. at 101–02. In light of Judge Droney's reliance on *Pennhurst*, the most sensible reading of *Wagner* is that, rather than going against the heavy weight of precedent that a state may not be sued in federal court without its consent, it perpetuates the reasoning of *Pennhurst* and *Quern* that while a plaintiff may seek prospective injunctive relief against an individual state officer, any suit under Section 1983 against a state agency is barred by the Eleventh Amendment.

Plaintiff's claim pursuant to Section 1981 is therefore dismissed.

C.      Title VII

Congress has abrogated the sovereign immunity extended to states by the Eleventh Amendment by enacting the 1972 Amendments to Title VII pursuant to the authority of section 5 of the Fourteenth Amendment. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976). Lawsuits alleging violations of Title VII by states or state departments or agencies may be brought in federal court even though claims brought under other federal statutes which allege similar violations of either the United States Constitution or federal law may be barred by the Eleventh Amendment. *See, e.g., Feingold*, 366 F.3d 149–150; *Mulero v. Conn.*, 253 F.R.D. 33, 38-39 (D. Conn. 2008) (Hall, J.). In *Feingold*, the plaintiff's Section 1983 claim against the defendant DMV was barred by the Eleventh Amendment but his Title VII claims,

which alleged disparate treatment on the basis of his race and religion and discharge in retaliation for the plaintiff's complaints of unlawful discrimination, were allowed to proceed. *See Feingold*, 366 F.3d at 149, 150, 157.

Defendant's counsel agreed at oral argument that Plaintiff's Title VII claim is not barred by the Eleventh Amendment and should remain for adjudication.

D.     ADA

Title I of the ADA prohibits "covered entities [from discriminating] against a qualified individual on the basis of disability in regard to . . . the . . . advancement . . . or . . . job training and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a). The Eleventh Amendment bars private individuals from bringing lawsuits against states in federal court pursuant to Title I of the ADA when monetary relief is sought. *See Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 360, 374 (2001). Plaintiff's counsel agreed with the Court at oral argument that dismissal of her ADA claim "would be appropriate." Plaintiff's claim under the ADA is therefore dismissed.

E.     Section 504 of the Rehabilitation Act of 1973

Section 504 of the Rehabilitation Act provides in relevant part that "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her disability . . . be subjected to any discrimination under any program or activity conducted by any program or activity receiving Federal assistance . . . ." 29 U.S.C. § 794(a). Section 1003 of the Rehabilitation Act abrogates states' immunity under the Eleventh Amendment for violations of Section 504 as a condition of receiving federal funding. *See* 42 U.S.C. § 2000d–7(a); *Lane v. Pena*, 518 U.S. 187, 197–98 (1996); *Hale v. Mann*, 219 F.3d 61, 67 (2d Cir. 2000).

Defendant does not challenge the Court's subject matter jurisdiction with respect to Plaintiff's claim under Section 504, and Defendant's counsel at oral argument stated that the issue of whether the DMV receives federal funds should be left "for another day." Therefore, Plaintiff's claim under Section 504 will remain for adjudication.

F.   CFEPA

Section 46a-100 of the Connecticut General Statutes permits claims to be brought pursuant to CFEPA "in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred, or in which the respondent transacts business, except any action involving a state agency or official may be brought in the superior court for the judicial district of Hartford." Conn. Gen. Stat. § 46a-100.  State statutory provisions consenting to suit in state court, however, are not waivers of Eleventh Amendment immunity from suit in federal court.  *Smith v. Reeves*, 178 U.S. 436, 441 (1900); *see also Lyons v. Jones, et al.*, 168 F. Supp. 2d 1, 5 (D. Conn. 2001) ("[T]his court has found that there is nothing in the Connecticut General Statutes that constitutes an express waiver of Eleventh Amendment immunity for CFEPA claims.").  Plaintiff's counsel agreed at oral argument that the CFEPA claim could be brought in state court, but not federal court. Therefore, Plaintiff's claim under CFEPA is dimissed.

G.   LMRA

Section 301 of the LMRA, 29 U.S.C. § 185, "governs the employer's duty to honor the collective bargaining agreement, and the duty of fair representation is implied under the scheme of the National Labor Relations Act." *White v. White Rose Food*, 128 F.3d 110, 113, (2d Cir. 1997) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983); *Price v. Int'l Union, United States Auto., Aerospace & Agric. Implement Workers*, 795 F.2d 1128,

1134 (2d Cir. 1986)). Under such a claim, a plaintiff is permitted to sue either his union, his employer, or both, but for his claim to be valid he must "allege violations on the part of both." *Id.* at 114 (citing *DelCostello*, 462 U.S. at 165).

"[T]he LMRA does not confer federal jurisdiction over labor disputes among states, their employees, and the unions who represent them." *Baumgart v. Stony Brook Children's Service, P.C.*, 249 F. App'x. 851 (2d Cir. 2007) (Summary Order); *see also Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009) (affirming district court's dismissal of complaint alleging breach of the duty of fair representation by New York City Department of Health and Mental Hygiene under the LMRA for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)). States and their political subdivisions are not considered "employers" within the context of the LMRA. *See* 29 U.S.C. § 152(2) ("the term 'employer' . . . shall not include . . . any State or political subdivision thereof . . . ."); *see also Nat'l Labor Relations Bd. v. Natural Gas Util. Dist. of Hawkins Cnty., Tenn.*, 402 U.S. 600, 602–03 (1976) (holding that a public utility district fell within the definition of a "political subdivision). The Second Circuit later interpreted *Hawkins County* to have adopted the NLRB's criteria to determine whether a given organization falls within the "political subdivision" exemption of § 152(2). *See Rose v. Long Island R.R. Pension Plan*, 828 F.2d 910, 916 (2d Cir. 1987). Under the NLRB criteria, "the exemption for political subdivisions [is limited to] entities that are either (1) created directly by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate." *Id.* (quoting *Hawkins County*, 402 U.S. at 604–05). Under either set of criteria, Defendant qualifies as a "political

subdivision," and thus is not an "employer" within the meaning of Section 301 of the LMRA.

Plaintiff's counsel agreed at oral argument that Plaintiff's LMRA claim is barred in federal court, that it must be brought in state court under the Municipal Employment Relations Act, and that dismissal of this count "would be appropriate." Plaintiff's claim under the LMRA is therefore dismissed.

IV.     Conclusion

For the reasons stated above, Defendant's motion [Doc. # 42] to dismiss is GRANTED. Plaintiff's Section 1981 and LMRA claims are dismissed. Plaintiff's ADA and CFEPA claims are also dismissed. The Title VII and Section 504 claims remain for adjudication.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 6th day of January, 2012.